eChristian E. Picone, CA State Bar No. 218275
Kathleen F. Sherman, CA State Bar No. 241200
Berliner Cohen, LLP
Ten Almaden Boulevard
Eleventh Floor
San Jose, California 95113-2233
Telephone: (408) 286-5800
Facsimile: (408) 998-5388
christian.picone@berliner.com
kathleen.sherman@berliner.com

Attorneys for Plaintiff enVista, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ENVISTA, LLC, an Indiana limited liability company; and ENVISTA CONCEPTS, LLC, an Indiana limited liability company, | CASE NO. |
| Plaintiff, | COMPLAINT FOR DAMAGES FOR: |
| v. | 1. MISAPPROPRIATION OF TRADE SECRETS (18 U.S.C. §§ 1831-1839) |
| AUDINTEL, INC., a California corporation; RAGHVENDRA SINHA, an individual; and DOES 1-20, | 2. MISAPPROPRIATION OF TRADE SECRETS (Cal. Civ. Code §§ 3426-3426.11) |
| Defendants. | 3. COPYRIGHT INFRINGEMENT (17 U.S.C. § 106) |
| | 4. BREACH OF WRITTEN CONTRACT (Employment and Confidentiality Agreement) |
| | 5. BREACH OF WRITTEN CONTRACT (Separation Agreement) |
| | 6. TORTIOUS INTERFERENCE WITH CONTRACT (Employment and Confidentiality Agreement) |
| | 7. TORTIOUS INTERFERENCE WITH CONTRACT (Separation Agreement) |
| | 8. UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a)) |
| | 9. UNFAIR COMPETITION (Cal. Bus. & Prof. Code §§ 17200 *et seq.*) |
| | (JURY TRIAL DEMANDED) |

///

///

///

CASE NO. _____

-1-

COMPLAINT

Plaintiffs ENVISTA, LLC and ENVISTA CONCEPTS, LLC allege as follows:

## **PARTIES**

1.      Plaintiff ENVISTA, LLC is a privately-held Indiana limited liability company having its principal place of business in Carmel, Indiana. ENVISTA, LLC was formed as a California limited liability company in or about August 2002. Plaintiff ENVISTA CONCEPTS, LLC is a privately-held Indiana limited liability company having its principal place of business in Carmel, Indiana. ENVISTA CONCEPTS, LLC was formed as a California limited liability company in or about July 2003. In or about July 2015, both ENVISTA, LLC and ENVISTA CONCEPTS, LLC were reformed as Indiana limited liability companies, and the corresponding California companies were converted out. ENVISTA, LLC and ENVISTA CONCEPTS, LLC have, and at all relevant times had, the same majority members. The ownership of the Indiana companies is, and at all relevant times was, the same as the corresponding original California companies. ENVISTA, LLC and ENVISTA CONCEPTS, LLC are, and at all relevant times since they became Indiana companies have been, registered with the California Secretary of State as foreign companies authorized to do business in California. Effective on or about January 1, 2017,  ENVISTA CONCEPTS, LLC will merge with ENVISTA, LLC, and the resulting entity will be known as ENVISTA, LLC, and will remain an Indiana limited liability company.

2.      enVista Innovative Tech Services Private Limited ("EITS") is, and at all relevant times from the time of its formation in or about late 2006 was, an India private limited company having its principal place of business in Hyderabad, India. ENVISTA, LLC is, and at all relevant times was, the beneficial owner of EITS.

3.      Plaintiffs are informed and believe and on that basis allege that Defendant AUDINTEL, INC. ("AUDINTEL") is, and at all relevant times was, a California corporation having its principal place of business in Cupertino, California.

4.      Defendant RAGHVENDRA SINHA ("SINHA") at all relevant times from in or about November 2003 through in or about late 2006 was an employee of ENVISTA and, at all relevant times from in or about late 2006 through on or about July 31, 2015, was an employee of EITS. At all relevant times through on or about July 31, 2015, SINHA was Director of EITS, meaning that he

4821-7343-1865v5
KSHERMAN\24918001

was primarily responsible for and managed the operations of EITS. Plaintiffs are informed and believe and on that basis allege that SINHA is, and at all relevant times was, an employee of and/or has an ownership interest in AUDINTEL. Plaintiffs are informed and believe and on that basis allege that, from in or about November 2003 through in or about late 2006, SINHA was a resident of the State of California, County of Santa Clara, and that from in or about late 2006 through the present, SINHA is and has been a resident of Hyderabad, the State of Telangana, India.

## JURISDICTION AND VENUE

5.      This is a civil action asserting claims for misappropriation of trade secrets under 18 U.S.C. §§ 1831-1839, misappropriation of trade secrets under California Civil Code §§ 3426-3426.11, copyright infringement under 17 U.S.C. § 106, breach of written contract (an Employment and Confidentiality Agreement and a Separation Agreement), intentional interference with contract (Separation Agreement and Employment and Confidentiality Agreements), unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), and unfair competition under California Business & Professions Code §§ 17200 *et seq*. This Court has subject matter jurisdiction over the federal claims asserted herein pursuant to 28 U.S.C. § 1331. This Court has subject matter jurisdiction over the non-federal claims asserted herein under 28 U.S.C. §§ 1332 and 1367. This Court also has personal jurisdiction over all named Defendants.

6.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b), as it is the district within which Defendant AUDINTEL resides, it is the district in which the conduct complained of arose, it is the district in which SINHA entered into the Employment and Confidentiality Agreement that is alleged in this Complaint, and it is the district in which all Defendants are subject to personal jurisdiction.

## INTRADISTRICT ASSIGNMENT

7.      This action is filed in the San Jose Division of the United States District Court, Northern District of California. This intradistrict assignment is proper because Defendant AUDINTEL resides in Santa Clara County, State of California. Furthermore, the alleged conduct occurred in Santa Clara County, State of California.

4821-7343-1865v5
KSHERMAN\24918001

**GENERAL ALLEGATIONS**

8.     ENVISTA, LLC, ENVISTA CONCEPTS, LLC, and EITS (collectively "ENVISTA") are, collectively, currently in the business of providing parcel and freight invoice audit services for domestic, global, and third party logistics shippers, bill payment, transportation consulting, call center support, software architecture, software code development, software integration, supply chain consulting for enterprise commerce, retail store consulting, and general information technology services and solutions. EITS is an operational unit only. It has no revenues of its own, and its operational costs are funded by ENVISTA, LLC. ENVISTA, LLC is the owner of all intellectual property developed by EITS, and that intellectual property is licensed to ENVISTA CONCEPTS, LLC for marketing purposes. ENVISTA CONCEPTS, LLC is responsible for marketing the ENVISTA products and services. Revenues of ENVISTA CONCEPTS, LLC are transferred to ENVISTA, LLC for the purpose of funding the EITS operational costs. The laws of India require companies operating in India to have at least one nominal shareholder who is an Indian citizen. For that reason, EITS was set up as an India company. However, EITS is, essentially, a division of ENVISTA, LLC.

9.     ENVISTA, LLC was formed, in part, with the purpose of developing and licensing a software package that would audit invoices for the shipment of small parcels and freight for its customers. This software package eventually became known as myShipINFO. "myShipINFO" is a registered ENVISTA, LLC trademark. ENVISTA has invested more than 100 person-years in the development of myShipINFO, and millions of dollars in its development and marketing. ENVISTA's small parcel audit customers are companies that ship millions of parcels with FedEx, UPS, and other carriers. ENVISTA's freight audit customers are companies that ship millions of packages by truck, rail, ship, or other means. myShipINFO audits the carrier invoices and finds and reports errors in the invoices, which ENVISTA's customers then use to obtain refunds from the carriers. SINHA was one of the chief software developers and architects of myShipINFO on behalf of ENVISTA.

10.    ENVISTA has taken a number of steps to secure its source code and other confidential and proprietary information, including but not limited to the following: ENVISTA's

4821-7343-1865v5
KSHERMAN\24918001

source code is hosted in private repositories by the web-based hosting service Bitbucket, with access controlled by login credentials provided only to ENVISTA development personnel on a "need to know" basis. USB drives on ENVISTA employees' computers are disabled to prevent surreptitious copying of confidential information. Internet access is restricted, limited to authorized sites, to prevent uploading of confidential information to file sharing programs. ENVISTA's internal network and computers is protected by a firewall, to protect against system intruders. ENVISTA does not issue laptops below the managerial level, to make copying of source code outside the workplace more difficult. It is ENVISTA's practice to require all employees to sign a confidentiality agreement at the time of employment, to require all employees to sign an acknowledgement that they have reviewed ENVISTA's employee manual containing confidentiality provisions and agree to comply with its provisions, and to require all of its customers to sign client agreements that contain confidentiality provisions. During his employment with ENVISTA, SINHA assisted in updating ENVISTA's employee manual from time to time, and secured signed acknowledgements from all members of his team that they had reviewed the updated manual and agreed to comply with its terms. It is also ENVISTA's practice to obtain an assignment to ENVISTA of all intellectual property rights from new employees at the time of employment.

11. SINHA signed an Employment and Confidentiality Agreement at the commencement of his employment with ENVISTA, LLC, on or about November 7, 2003. At that time, ENVISTA, LLC was a resident of the State of California, County of Santa Clara. That agreement provides, in relevant part:

> 7. **CONFIDENTIAL INFORMATION.** As used in this Agreement, the term "Confidential Information" means (a) any and all trade secret information of the enVista and includes the following information. including that conceived or developed by Employee during the course of employment and regardless of whether or not it (i) derives independent economic value from not being generally known, (ii) is subject of the efforts that .are reasonable under the circumstances to maintain its secrecy, or (iii) otherwise constitutes a trade secret: all customer. prospective customer and supplier vendor lists, data, pricing and cost information for such customers and prospective customers, product designs, technical know-how, research and development work, software, business plans, projections, market research, enVista financial information, employee lists. Employee acknowledges that the Confidential Information of enVista is a special, valuable, and unique asset of enVista. Except as may be necessary in the performance of the Employee's duties with

enVista, Employee shall not, directly or indirectly, while employed by enVista and after separation of Employment from enVista, divulge or disclose to third party (ies) or use for his or her own benefit or for the benefit of a third party (ies), any Confidential Information of enVista, without first obtaining prior written consent of the enVista to do so. Employee will abide by enVista's policies and rules established from time to time by it for the protection of its Confidential Information.

8.   **INVENTIONS AS SOLE PROPERTY OF ENVISTA**. Employee agrees to irrevocably assign to enVista or enVista's designee all right, title, and interest in any inventions, discoveries, concepts or ideas, or expressions thereof ("Deliverables"), whether or not subject to patents. copyrights, trademarks, or service mark protections, and whether or not reduced to practice, conceived or developed by Employee while employed with enVista which relate to or result from the actual or anticipated business, work, research with enVista. Such Deliverables shall be the sole and exclusive property of enVista. Employee will do all things reasonably requested by enVista to assign to and vest in enVista the entire right, title, and interest to any such Deliverables.

9.   **RETURN OF MATERIALS**. Upon separation of employment with enVista, regardless of the reason for such separation, Employee will leave with, or promptly return to, enVista all documents, records, notebooks, magnetic tapes, disks, or other materials, including all copies, in his/her possession or control which contain Confidential Information of enVista or any other information concerning enVista. Its products, services. or customers. whether prepared by the Employee of others.

10.   **NON-SOLICITATION OF ENVISTA'S EMPLOYEES OR CONTRACTORS**. Employee agrees that during his/her employment with enVista, and for a period of one year following separation of such employment, regardless of the reason for separation, Employee shall not on Employee's own behalf or in the service of or on behalf of any third party (ies), directly or indirectly, hire, cause to be hired, solicit, engage any person or entity who is or was employed or engaged by enVista at any time during the period of time that Employee worked for enVista, or was an employee or contractor of enVista after Employee's employment with enVista terminated.

11.   **NON-SOLICITATION OF ENVISTA'S CUSTOMERS**. Employee agrees that during his/her employment with enVista and for a period of 365 days following separation of such employment. Employee on Employee's own behalf or on behalf of any third party will not divert or take away, or attempt to divert or take away, or call upon or solicit any of the customers of enVista, or prospective customers enVista identified.

The term "customer'" of enVista as used in this Agreement shall be defined and construed to mean any of the following any and all persons, partnerships, corporations, firms, or other entities (a) who order or have ordered information, products, or services from enVista during the one year preceding the Employee's separation and during

4821-7343-1865v5
KSHERMAN\24918001

Employee's employment with enVista; (b) with whom Employee had personal contact within six (6) months prior to the date of separation of employment and for the purpose of soliciting the sale of services by enVista to such person or entity; or (c) who is a current customer of employer at the time of Employee's separation of employment, including without limitation a person who did business with enVista during the period of time that Employee worked for enVista.

\*\*\*

14.  **SURVIVAL OF COVENANTS**. This Agreement shall be binding upon any successors or heirs or representatives of the parties hereto. The terms set forth in paragraphs 2, 7, 8, 9, 10, 11, and 12 shall survive any separation or rescission of this Agreement unless enVista executes a written agreement specifically releasing the Employee from such covenants.

15.  **LEGAL AND EQUITABLE RELIEF**. The parties hereby acknowledge and agree that in the event of the breach by Employee of any of the restrictions contained in paragraphs 7, 8, 9, 10, 11, and 12 of this Agreement, enVista shall be entitled to injunctive and equitable relief both during dependency of the action and permanently, without the necessity for the posting of bond. or other security, since the remedy at law would be inadequate and insufficient to prevent a breach of this Agreement, or any part of it, and to secure the enforcement of this Agreement. In addition. enVista bringing such action shall be entitled to such other remedies in law, in equity, or under this Agreement, as may be available, including, without limitation, such damages as it can show that it has sustained by reason of such breach.

\*\*\*

17.  **MISCELLANEOUS**. Should either party hereto, or any heir, personal representative hereto, resort to legal proceedings in connection with this Agreement or Employee's employment with enVista, the party or parties prevailing in such legal proceeding shall be entitled, in addition to such other relief as may be granted, to recover its or their reasonable attorneys' fees and costs. No provisions of this Agreement may be modified unless such modification is agreed to in writing and signed by an authorized representative of the parties. No waiver by either hereto at any time of any breach by the other party hereto of, or compliance with, any condition of this Agreement shall be deemed a waiver of similar provisions. The validity and construction of this Agreement shall be governed by the laws of the State of Indiana. Any payments provided for in this Agreement shall be paid net of any applicable withholding of taxes required under federal, state or local law. This Agreement. together with the offer letter provided by enVista. shall set forth the entire agreement of the parties in respect of the subject matter contained herein and supersedes all prior agreement, promises, communications, whether oral or written, by the parties hereto in respect of the subject matter contained herein.

4821-7343-1865v5
KSHERMAN\24918001

12.     On or about January 10, 2004, SINHA acknowledged in writing having received a copy of the enVista Employment Policies, and committed to reading and following them. At that time, ENVISTA, LLC was a resident of the State of California, County of Santa Clara. Those Policies provided, in relevant part:

### 4.11    Confidential Information and Nondisclosure

By continuing employment with enVista, employees agree that they will not disclose or use any of enVista's confidential information, either during or after their employment. enVista sincerely hopes that its relationship with its employees will be long-term and mutually rewarding. However, employment with enVista assumes an obligation to maintain confidentiality, even after an employee leaves enVista.

Additionally, our customers and suppliers entrust enVista with important information relating to their businesses. The nature of this relationship requires maintenance of confidentiality. In safeguarding the information received, enVista earns the respect and further trust of our customers and suppliers.

If you are questioned by someone outside the company or your department and you are concerned about the appropriateness of giving them certain information, you are not required to answer. Instead, as politely as possible, refer the request to the Vice President of Business Development or Human Resources.

13.     In or about late 2006, ENVISTA decided to transfer its myShipINFO development, as well as a call center, to Hyderabad, India. Beginning in or about late 2006, the development of my ShipINFO and call center operations were conducted through EITS, with SINHA its Director from in or about late 2006 through on or about July 31, 2015. As EITS Director, SINHA reported to ENVISTA, LLC.

14.     In or about April 2015, after retaining a new auditor, ENVISTA discovered a number of improprieties in the operations of EITS which were designed to benefit SINHA at ENVISTA's expense. After a thorough investigation, ENVISTA concluded that its relationship with SINHA was unsalvageable, and that his termination was the only option. ENVISTA and SINHA agreed to part ways and entered into a Separation Agreement. The Separation Agreement was executed on or about July 14, 2015 and was effective July 31, 2015. While the Separation Agreement was nominally between EITS and SINHA, ENVISTA, LLC and ENVISTA CONCEPTS, LLC were among its intended beneficiaries. The Separation Agreement provides, in relevant part:

4821-7343-1865v5
KSHERMAN\24918001

**WHEREAS:**

A. Envista [EITS] is engaged, inter alia, in the business of Information Technology Services.

B. Raghu [SINHA] is presently employed as the Director of Envista [EITS] with effect from the date of incorporation.

C. Raghu [SINHA] has tendered his resignation on the date of this agreement, from directorship of Envista [EITS], with effect from 31st of July, 2015.

D. Raghu [SINHA] has also submitted his resignation as an employee of Envista [EITS] on the date of this agreement to pursue better career opportunities and has requested Envista [EITS] to relieve him from 31st of July, 2015.

E. Raghu [SINHA] is also a shareholder in Envista [EITS] and also holds two shares[.]

F. Envista [EITS] has accepted the request of Raghu [SINHA] to resign as a Director and Employee by acceding his request to relieve him at the requested date and has decided to relieve Raghu [SINHA] from services of Envista [EITS] from the closing hours of 31st of July, 2015 ("Separation Date").

E. Accordingly, the Parties are executing this Agreement to (i) formally record the release and discharge of Raghu [SINHA] with effect from the Separation Date; and (ii) enter into a full and final settlement with Raghu [SINHA], with effect from the date hereof and subject to the terms and conditions contained in this Agreement.

***

*3. Undertaking*

Raghu [SINHA] hereby irrevocably and unconditionally agrees, confirms and undertakes that that after the execution of the Agreement, he shall comply with the following:

*3.1 Full and final settlement of Dues:* Envista[EITS] shall pay to Raghu [SINHA] the amount as set forth in Part I of the attached Schedule as full and final settlement of his outstanding dues against Envista [EITS] ("Final Payment"). In addition to the statutory Gratuity payable by the Envista Innovative Tech Services Private Limited Employees Group Gratuity Fund, Envista [EITS] shall also make an ex-gratia payment to Raghu [SINHA] equivalent to what his salary would have been had he continued to work until 31st January, 2016 ("Ex-Gratia Payment") as set out in Part II of the Schedule. The Final Payment and the Ex-Gratia Payment will be paid to Raghu [SINHA] in the manner set out in Schedule to this Agreement. The Final Payment and the Ex-Gratia Payment Set Out in the Schedule by Raghu [SINHA] shall constitute the full and final settlement of all any claims or rights of action, known and unknown, that Raghu [SINHA] and/or his heirs, executors, administrators, successors, and assigns, have or may have against Envista [EITS] and/or its,

4821-7343-1865v5
KSHERMAN\24918001

shareholders, Directors, subsidiaries, parents, branches, divisions, affiliates, related entities, whether in India or in any other country ("Envista Group Companies"), directly or indirectly, in connection with the employment and/or cessation of employment of Raghu [SINHA] with Envista [EITS] or in respect of any action taken by Envista [EITS] during the period of the employment of Raghu [SINHA] including any claim under any law in force whether in India or in any other country which might be made by Raghu [SINHA], as of the Separation Date. All payments 'to be made hereunder shall be subject to applicable tax deductions and withholdings and deductions towards social security benefits, as required under the laws of India.

**3.2 Negative Statements:** The Parties shall not make or publish any negative statements concerning Envista [EITS] / Raghu [SINHA], Envista Group Companies or take any actions which would be prejudicial or materially adverse to the interests of Raghu [SINHA] and/or Envista [EITS] or Envista Group Companies. More specifically, the Parties shall not, under any circumstance whatsoever, engage in any action or make any public or private comments that disparage or criticize either Party, or their management or practices or that could disrupt or impair their normal operations or harm the reputation of either Party or Envista Group Companies with its customers, business associates, government authorities or the public.

**3.3 Non-disclosure of Information:** Raghu [SINHA] shall not (except with the prior written approval of the Directors of Envista [EITS]) pass on any information to a third party that may be against the interest of Envista [EITS].

**3.4 Non Solicitation:** Raghu [SINHA] shall not for any reason whatsoever, directly or indirectly, solicit, induce, encourage or attempt to solicit, induce or encourage, any employee of Envista [EITS] to terminate his/her employment or other relationship with Envista [EITS].

***

**3.9 Release and Discharge**

On receiving the payment as detailed in the attached Schedule, Raghu [SINHA] shall release and forever discharge Envista [EITS] and the Envista Group Companies and their employees from all claims, charges, complaints, demands, liabilities or causes of action of any kind or nature whatsoever based on contract, tort or statute, which he has or had or claimed to have against Envista [EITS] at any time prior to the Separation Date, including without limitation, any claims arising out of, based upon or relating to the employment terms or any other agreement regarding terms of his employment with Envista [EITS].

**4. Company Property**

Raghu [SINHA] will not disclose to anyone, commercially exploit or in any way communicate, directly or indirectly, for his own use or for anyone else's use, the intellectual property including client information, trade secrets, business information and other

CASE NO. _____

4821-7343-1865v5
KSHERMAN\24918001

confidential information relevant to the business of Envista [EITS] or Envista Group Companies. Raghu [SINHA] shall deliver to Envista [EITS] (without retaining copies of the same) all documents and items, especially hardware, data carriers, data, software and copies of such including personal notes or other property of Envista [EITS] or Envista Group Companies within the possession or under the control of Raghu [SINHA] and relating to the affairs and business (as the case may be) of Envista [EITS] or Envista Group Companies whether or not the same were originally supplied by Envista [EITS] and whether recorded, contained or maintained in writing, electronically or in other form on or before the Separation Date. However, subject to the above Envista [EITS] will endeavor subject to statutory clearance (from Customs, Excise and Software Technology Parks of India, authorities) provide the laptop computer, being currently used by Raghu [SINHA] to him on no cost basis.

\*\*\*

### 13. Indemnity

Raghu [SINHA] agrees to indemnify, protect and hold harmless Envista [EITS] for any loss, damage or other liability incurred by Envista [EITS] for any act done or omission on his part during the period of his employment with Envista [EITS], which was not in good faith or without exercise of due diligence, honesty and fairness.

15.     Prior to providing to SINHA the laptop computer that he was entitled to under the Separation Agreement, EITS "wiped" the computer's hard drive to insure that no ENVISTA confidential information remained on it.

16.     Even before the ink was dry on the Separation Agreement, SINHA began breaching both the Separation Agreement and his Employment and Confidentiality Agreement. An EITS employee who was the technical architect of the myShipINFO software provided his notice of resignation on or about July 15, 2015, the date on which SINHA learned that his last day at EITS would be July 31, 2015. That employee's last day at EITS was also July 31, 2015. Plaintiffs are informed and believe and on that basis allege that SINHA immediately began preparing to compete against Plaintiffs, using Plaintiffs' intellectual property and EITS's former employees. Plaintiffs are informed and believe and on that basis allege that SINHA has solicited at least seven EITS developers and at least seven members of EITS's operations staff to work with him in his new enterprise, with the most recent of those having resigned from EITS effective September 30, 2016.

17.     Plaintiffs are informed and believe and on that basis allege that, apparently seeking to harm ENVISTA, SINHA caused to be posted on Glassdoor's India website approximately eight

4821-7343-1865v5
KSHERMAN\24918001

1  disparaging comments about EITS in general, as well as specific EITS personnel, beginning in

2  October 2015 and continuing through April 2016.

3      18.    Plaintiffs are informed and believe and on that basis allege that AUDINTEL was

4  incorporated on or about January 29, 2016, and that SINHA is a co-founder and majority

5  shareholder. However, Plaintiffs did not immediately learn about AUDINTEL, because SINHA used

6  LinkedIn's "hide" feature to prevent his ENVISTA connections from seeing that he had identified

7  himself on LinkedIn as a co-founder of AUDINTEL beginning March 2016. Plaintiffs did not

8  discover that SINHA had "hidden" his profile from his ENVISTA connections until August 2016.

9      19.    In or about August 2016, Plaintiffs happened to learn of the existence of

10  AUDINTEL's website. Plaintiffs are informed and believe and on that basis allege that AUDINTEL

11  reserved the audintel.com domain name on or about October 21, 2015. Through its website,

12  AUDINTEL claims to provide software and services with functionality that is substantially similar

13  to that of myShipINFO. Specifically, the AUDINTEL website promotes "a secure small parcel audit

14  platform" and photos on the website support the inference that a freight audit capability is soon to be

15  released. The AUDINTEL website touts features of its small parcel audit solution that are unusual in

16  their similarity to myShipINFO. Moreover, even though Plaintiffs have invested more than 100

17  person-years in the development of myShipINFO, it appears that AUDINTEL was able to develop

18  similar market-ready software in less than five person-years. While AUDINTEL's source code is not

19  available on its website, it does provide sample reports containing sample customer data. Strikingly,

20  the customer data populating one of AUDITEL's sample reports comes from a customer of

21  Plaintiffs. The AUDINTEL sample report analyzes twelve UPS charges that exactly mirror twelve

22  UPS charges to a customer of Plaintiffs in that they are identical as to invoice date, delivery date,

23  proper UPS charges, and UPS invoiced amount. There is even one entry that is missing a delivery

24  date in both Plaintiffs' customer database and in the AUDINTEL sample report. Such similarities in

25  the data cannot be a coincidence. The customer whose data was copied is a current customer of

26  Plaintiffs. Plaintiffs are informed and believe and on that basis allege that customer has not provided

27  its data to AUDINTEL. The only reasonable implication to be drawn from the similarities in the data

28  is that SINHA, or someone else on behalf of AUDINTEL and/or SINHA, unlawfully obtained

Plaintiffs' customer data for AUDINTEL's use. The unlawful copying of Plaintiffs' confidential customer data supports the inference that the same individual(s) unlawfully copied Plaintiffs' myShipINFO source code for AUDINTEL's use.

20.    Plaintiffs are informed and believe and on that basis allege that, in addition to copying Plaintiffs' intellectual property and other confidential information, and having used this information to bring a competing product to market, AUDINTEL is also using Plaintiffs' confidential customer information to solicit Plaintiffs' customers.

## **FIRST CAUSE OF ACTION**

[Misappropriation of Trade Secrets under

18 U.S.C. §§ 1831-1839 – against all Defendants]

21.    Plaintiffs reallege, and incorporate herein by reference, the allegations of paragraphs 1 through 20.

22.    The  myShipINFO source code constitutes and contains a number of trade secrets within the meaning of 18 U.S.C. §§ 1831-1939 in that ENVISTA has taken reasonable measures to keep such information secret and the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of information. In addition, Plaintiff's customer information, including but not limited to customer identities, contact information, contract terms, contract pricing, services requested, services provided, audit results, client login information, and customer-provided information such as carrier contracts, rates sheets, schedules, and discount agreements, constitutes and contains a number of trade secrets in that ENVISTA has taken reasonable measures to keep such information secret and the information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of information.

23.    Plaintiffs' trade secrets are related to a product, myShipINFO, and related ENVISTA services, that are used in, or intended for use in, interstate or foreign commerce. While some of the conduct alleged herein occurred outside the United States, Plaintiffs are informed and believe and on

4821-7343-1865v5
KSHERMAN\24918001

that basis allege that an act in furtherance of the misappropriation of Plaintiffs' trade secrets was committed in the United States.

24.     Pursuant to SINHA's Employment and Confidentiality Agreement, the enVista Employment Policies, and applicable law, SINHA was, and remains, under a duty both to keep ENVISTA's confidential, proprietary, and trade secret information secret, and not to use or disclose such information other than for the benefit of ENVISTA and with ENVISTA's authorization.

25.     Plaintiffs are informed and believe and on that basis allege that SINHA obtained Plaintiffs' trade secret information by improper means either by directly copying or acquiring it himself or by inducing others to copy or acquire it, knowing that the acquisition of Plaintiffs' trade secret information by those means was improper. Plaintiffs never consented, either expressly or impliedly, to the copying or disclosure of the information either by SINHA or by others he induced to copy or acquire it. To the extent that SINHA directly copied or acquired Plaintiffs' trade secret information himself, doing so was improper, among other reasons, because SINHA had a contractual obligation not to copy, disclose, or otherwise misappropriate that information, pursuant to his Employment and Confidentiality Agreement, the enVista Employment Policies, and the Separation Agreement. To the extent that SINHA induced others to copy or acquire Plaintiffs' trade secret information, Plaintiffs are informed and believe and on that basis allege that the person or persons SINHA induced to copy or acquire the information also had contractual obligations not to copy, disclose, or otherwise misappropriate the information.

26.     Plaintiffs are informed and believe and on that basis allege that AUDINTEL acquired Plaintiffs' trade secrets from SINHA, or others acting at SINHA's behest, and that AUDINTEL knew or had reason to know that Plaintiffs' trade secrets were acquired by improper means.

27.     Plaintiffs are informed and believe and on that basis allege that SINHA, or others acting at SINHA's behest, disclosed Plaintiffs' trade secrets to SINHA and AUDINTEL, without Plaintiffs' consent, after acquiring the trade secrets by improper means. Plaintiffs are informed and believe and on that basis allege that, at the time of the disclosure, SINHA and AUDINTEL knew that the trade secrets had been acquired by improper means and that the trade secrets had been acquired in breach of contractual obligations to maintain the confidentiality of the trade secrets.

4821-7343-1865v5
KSHERMAN\24918001

28.     Plaintiffs are informed and believe and on that basis allege that SINHA and AUDINTEL, without Plaintiffs' consent, used Plaintiffs' trade secrets that SINHA, or others acting at SINHA's bequest, had acquired by improper means. Plaintiffs are informed and believe and on that basis allege that, at the time that SINHA and AUDINTEL used Plaintiffs' trade secrets, SINHA and AUDINTEL knew that the trade secrets had been acquired by improper means and that the trade secrets had been acquired in breach of contractual obligations to maintain the confidentiality of the trade secrets.

29.     Plaintiffs are informed and believe and on that basis allege that SINHA and AUDINTEL did not acquire Plaintiffs' trade secrets through reverse engineering, independent derivation, or any other lawful means of acquisition.

30.     Defendants' actual and threatened misappropriation of Plaintiffs' trade secrets, unless and until enjoined and restrained by order of this Court, is causing and will continue to cause great and irreparable harm to Plaintiffs. Plaintiffs are threatened with losing its intellectual property as well as current and potential business. Plaintiffs have no adequate remedy at law for the injuries currently being suffered and the additional injuries that are threatened, because it would be impossible to quantify in dollars the losses described above when this matter is finally adjudicated, and Defendants will continue to engage in their wrongful conduct and Plaintiffs will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further such acts of misappropriation.

31.     As a direct and proximate cause of Defendants' misappropriation of Plaintiffs' trade secrets, Defendants have been unjustly enriched in an amount to be ascertained at trial, and Plaintiffs have sustained, and will continue to sustain, actual damages in an amount to be determined according to proof.  In lieu of damages, Plaintiffs are entitled to a reasonable royalty for Defendants' unauthorized disclosure and use of Plaintiffs' trade secrets. Plaintiffs have also suffered irreparable harm as a result of Defendants' actions.

32.     Plaintiffs are informed and believe and on that basis allege that, in performing the acts alleged above, Defendants acted willfully and maliciously, thereby warranting an award of

1    exemplary damages in an amount appropriate to punish Defendants and deter others from engaging

2    in similar misconduct.

3    ### SECOND CAUSE OF ACTION

4    [Misappropriation of Trade Secrets under

5    California Civil Code §§ 3426 *et seq.* – against all Defendants]

6        33.    Plaintiffs reallege, and incorporate herein by reference, the allegations of paragraphs

7    1 through 32.

8        34.    The  myShipINFO source code constitutes and contains a number of trade secrets

9    within the meaning of California Civil Code §§ 3426 *et seq.* in that the information derives

10   independent economic value, actual or potential, from not being generally known to the public or to

11   other persons who can obtain economic value from its disclosure or use, and because it is the subject

12   of efforts that are reasonable under the circumstances to maintain its secrecy. In addition, Plaintiff's

13   customer information, including but not limited to customer identities, contact information, contract

14   terms, contract pricing, services requested, services provided, audit results, client login information,

15   and customer-provided information such as carrier contracts, rates sheets, schedules, and discount

16   agreements, constitutes and contains a number of trade secrets in that the information derives

17   independent economic value, actual or potential, from not being generally known to the public or to

18   other persons who can obtain economic value from its disclosure or use, and because it is the subject

19   of efforts that are reasonable under the circumstances to maintain its secrecy.

20       35.    Pursuant to SINHA's Employment and Confidentiality Agreement, the enVista

21   Employment Policies, and applicable law, SINHA was, and remains, under a duty both to keep

22   ENVISTA's confidential, proprietary, and trade secret information secret, and not to use or disclose

23   such information other than for the benefit of ENVISTA and with ENVISTA's authorization.

24       36.    Plaintiffs are informed and believe and on that basis allege that SINHA obtained

25   Plaintiffs' trade secret information by improper means either by directly copying or acquiring it

26   himself or by inducing others to copy or acquire it, knowing that the acquisition of Plaintiffs' trade

27   secret information by those means was improper. Plaintiffs never consented, either expressly or

28   impliedly, to the copying or disclosure of the information either by SINHA or by others he induced

to copy or acquire it. To the extent that SINHA directly copied or acquired Plaintiffs' trade secret information himself, doing so was improper, among other reasons, because SINHA had a contractual obligation not to copy, disclose, or otherwise misappropriate that information, pursuant to his Employment and Confidentiality Agreement, the enVista Employment Policies, and the Separation Agreement. To the extent that SINHA induced others to copy or acquire Plaintiffs' trade secret information, Plaintiffs are informed and believe and on that basis allege that the person or persons SINHA induced to copy or acquire the information also had contractual obligations not to copy, disclose, or otherwise misappropriate the information.

37.     Plaintiffs are informed and believe and on that basis allege that AUDINTEL acquired Plaintiffs' trade secrets from SINHA, or others acting at SINHA's behest, and that AUDINTEL knew or had reason to know that Plaintiffs' trade secrets were acquired by improper means.

38.     Plaintiffs are informed and believe and on that basis allege that SINHA, or others acting at SINHA's behest, disclosed Plaintiffs' trade secrets to SINHA and AUDINTEL, without Plaintiffs' consent, after acquiring the trade secrets by improper means. Plaintiffs are informed and believe and on that basis allege that, at the time of the disclosure, SINHA and AUDINTEL knew that the trade secrets had been acquired by improper means and that the trade secrets had been acquired in breach of contractual obligations to maintain the confidentiality of the trade secrets.

39.     Plaintiffs are informed and believe and on that basis allege that SINHA and AUDINTEL, without Plaintiffs' consent, used Plaintiffs' trade secrets that SINHA, or others acting at SINHA's bequest, had acquired by improper means. Plaintiffs are informed and believe and on that basis allege that, at the time that SINHA and AUDINTEL used Plaintiffs' trade secrets, SINHA and AUDINTEL knew that the trade secrets had been acquired by improper means and that the trade secrets had been acquired in breach of contractual obligations to maintain the confidentiality of the trade secrets.

40.     Plaintiffs are informed and believe and on that basis allege that SINHA and AUDINTEL did not acquire Plaintiffs' trade secrets through reverse engineering, independent derivation, or any other lawful means of acquisition.

41.     Defendants' actual and threatened misappropriation of Plaintiffs' trade secrets, unless

and until enjoined and restrained by order of this Court, is causing and will continue to cause great and irreparable harm to Plaintiffs. Plaintiffs are threatened with losing its intellectual property as well as current and potential business. Plaintiffs have no adequate remedy at law for the injuries currently being suffered and the additional injuries that are threatened, because it would be impossible to quantify in dollars the losses described above when this matter is finally adjudicated, and Defendants will continue to engage in their wrongful conduct and Plaintiffs will continue to suffer irreparable injury that cannot be adequately remedied at law unless Defendants are enjoined from engaging in any further such acts of misappropriation.

42.     As a direct and proximate cause of Defendants' misappropriation of Plaintiffs' trade secrets, Defendants have been unjustly enriched in an amount to be ascertained at trial, and Plaintiffs have sustained, and will continue to sustain, actual damages in an amount to be determined according to proof.  In lieu of damages, Plaintiffs are entitled to a reasonable royalty for Defendants' unauthorized disclosure and use of Plaintiffs' trade secrets. Plaintiffs have also suffered irreparable harm as a result of Defendants' actions.

43.     Plaintiffs are informed and believe and on that basis allege that, in performing the acts alleged above, Defendants acted willfully and maliciously, thereby warranting an award of exemplary damages in an amount appropriate to punish Defendants and deter others from engaging in similar misconduct and, furthermore, warranting an award of reasonable attorneys' fees and costs to Plaintiffs .

## THIRD CAUSE OF ACTION

[Copyright Infringement under 17 U.S.C. § 106 – against all Defendants]

44.     Plaintiffs reallege, and incorporate herein by reference, the allegations of paragraphs 1 through 43.

45.     The myShipINFO source code contains a substantial amount of material wholly original with Plaintiffs and that constitutes copyrightable subject matter under the laws of the United States. Plaintiffs have complied with the Copyright Act, 17 U.S.C. § 101 et seq. and all other laws governing copyright regarding the myShipINFO source code. The myShipINFO source code is fixed in tangible mediums of expression.

4821-7343-1865v5
KSHERMAN\24918001

46. Pursuant to the Employment and Confidentiality Agreements that ENVISTA has with each of its employees that worked on development of the myShipINFO source code, Plaintiffs are sole owners of all rights, title, and interest in and to the myShipINFO source code.

47. Pursuant to 17 U.S.C. § 411, ENVISTA, LLC sought and obtained a copyright registration in the original portions of the myShipINFO source code as it existed on November 1, 2016, including all previous versions. That Registration Number is TXu002015111, effective November 1, 2016. ENVISTA, LLC has not yet received from the Copyright Office a copy of the registration certificate. However, attached hereto as Exhibit 1 is a true and correct copy of the registration of the myShipINFO source code as obtained from the website of the Copyright Office.

48. Plaintiffs are informed and believe and on that basis allege that Defendants copied the myShipINFO source code from the Bitbucket repository between about April 1, 2015 and August 10, 2016, and copied that source code to another location. This copying was not authorized by ENVISTA and therefore constitutes copyright infringement under 17 U.S.C. § 106.

49. Based on the facts alleged above, Plaintiffs are informed and believe and on that basis allege that Defendants developed a software product that is substantially similar to myShipINFO in its original portions,  which constitutes copyright infringement under 17 U.S.C. § 106.

50. Plaintiffs are informed and believe and on that basis allege that Defendants actually copied the myShipINFO source code, and that AUDINTEL's software product is an extension or modification of the myShipINFO source code and therefore constitutes copyright infringement under 17 U.S.C. § 106.

51. Based on the facts alleged above, Defendants' past and ongoing infringement of Plaintiffs' copyright is and was willful.

52. Plaintiffs are informed and believe and on that basis allege that the foregoing conduct by Defendants was done willfully, wantonly, in bad faith and with knowledge of the fact that the myShipINFO source code is protected by federal copyright law and is owned by Plaintiffs.

53. The natural, probable, and foreseeable result of the aforesaid conduct of Defendants has been and will continue to be to deprive Plaintiffs of the value of myShipINFO, to deprive

4821-7343-1865v5
KSHERMAN\24918001

1   Plaintiffs of goodwill, to injure Plaintiffs' relations with existing and prospective customers, and to

2   impose substantial expenses on Plaintiffs to counteract the aforesaid conduct.

3       54.     As a proximate result of Defendants' actions, Plaintiffs have been harmed. Plaintiffs

4   are entitled to recover from Defendants the damages they have sustained and will sustain because of

5   Defendants' wrongful acts as alleged above. Plaintiffs are further entitled to recover from

6   Defendants the gains, profits, and advantages, without any deduction for overhead expenses, that

7   Defendants have obtained because of their wrongful acts as alleged above. Plaintiffs are further

8   entitled to recover from Defendants statutory damages for willful infringement.

9       55.     Plaintiffs are entitled to preliminary and permanent injunctions restraining Defendants

10  and AUDINTEL's officers, agents, and employees, and all persons acting in concert with

11  Defendants, from engaging in further such acts in violation of the copyright laws.

12                          **FOURTH CAUSE OF ACTION**

13  [Breach of Written Contract (Employment and Confidentiality Agreement) – against SINHA]

14      56.     Plaintiffs reallege, and incorporate herein by reference, the allegations of paragraphs

15  1 through 55.

16      57.     In exchange for valuable consideration, SINHA executed the Employment and

17  Confidentiality Agreement.

18      58.     The Employment and Confidentiality Agreement constitutes a valid, binding, and

19  enforceable contract that required SINHA, during the period of his employment with ENVISTA and

20  afterwards, not to "directly or indirectly" "divulge or disclose to third party (ies) or use for his or her

21  own benefit or for the benefit of a third party (ies)" any ENVISTA "Confidential Information"

22  without first obtaining ENVISTA's written consent. The term "Confidential Information" was

23  defined in Section 7 of the Employment and Confidentiality Agreement, as quoted in paragraph 11,

24  above, and included software and customer information, among other types of non-public

25  information. SINHA also agreed to abide by ENVISTA's rules for the protection of that Confidential

26  Information. The Employment and Confidentiality Agreement also required SINHA to return all

27  copies of Confidential Information in his possession upon separation from ENVISTA.

28

4821-7343-1865v5
KSHERMAN\24918001

59.     The Employment and Confidentiality Agreement also required SINHA to irrevocably assign to ENVISTA "or its designee all right, title, and interest in any inventions, discoveries, concepts or ideas, or expressions thereof" "reduced to practice or conceived or developed by" SINHA.

60.     The Employment and Confidentiality Agreement also required SINHA, for a one year period following separation from ENVISTA, not to, on his own behalf or that of a third party such as AUDINTEL, "directly or indirectly, hire, cause to be hired, solicit, [or] engage" any ENVISTA employee or contractor.

61.     The Employment and Confidentiality Agreement also required SINHA, for a one year period following separation from ENVISTA, not to, on his own behalf or that of a third party such as AUDINTEL, "divert or take away, or attempt to take away, or call upon or solicit any of the customers" or prospective customers of ENVISTA.

62.     Plaintiffs have performed, or were excused from performing, all of their obligations under the Employment and Confidentiality Agreement with SINHA.

63.     SINHA has breached his contractual obligations as alleged above.

64.     As a direct and proximate result of SINHA's breaches of contract, Plaintiffs have suffered, and will continue to suffer, actual damages in an amount to be determined according to proof. Plaintiffs seek compensation for all damages and losses directly and proximately caused by these breaches.

65.     Plaintiffs are entitled to preliminary and permanent injunctions restraining SINHA, and all persons acting in concert with him, from engaging in further such acts in breach of his Employment and Confidentiality Agreement.

66.     Plaintiffs are entitled to their reasonable attorneys' fees and costs in prosecuting this action.

**FIFTH CAUSE OF ACTION**

[Breach of Written Contract (Separation Agreement) – against SINHA]

67.     Plaintiffs reallege, and incorporate herein by reference, the allegations of paragraphs 1 through 66.

68.     In exchange for valuable consideration, SINHA executed the Separation Agreement.

69.     The Separation Agreement constitutes a valid, binding, and enforceable contract that required SINHA not to "make or publish any negative statements concerning [ENVISTA] … or take any actions which would be prejudicial or materially adverse to the interests of … [ENVISTA]" and not to "engage in any action or make any public or private comments that disparage or criticize … [ENVISTA], or their management or practices or that could disrupt or impair their normal operations or harm the reputation of … [ENVISTA] with its customers, business associates, government authorities or the public."

70.     The Separation Agreement also required SINHA "not for any reason whatsoever, directly or indirectly, solicit, induce, encourage or attempt to solicit, induce or encourage, any employee of [EITS] to terminate his/her employment or other relationship with [EITS].

71.     The Separation Agreement also required SINHA not to "pass on any information to a third party that may be against the interest of [ENVISTA]" without ENVISTA's prior written approval; "not to disclose to anyone, commercially exploit or in any way communicate, directly or indirectly, for his own use or for anyone else's use, the intellectual property including client information, trade secrets, business information and other confidential information relevant to the business of [ENVISTA]; and to "deliver to [EITS] (without retaining copies of the same) all documents and items, especially hardware, data carriers, data, software and copies of such including personal notes or other property of [ENVISTA] within the possession or under the control of [SINHA] and relating to the affairs and business (as the case may be) of [ENVISTA] whether or not the same were originally supplied by [EITS] and whether recorded, contained or maintained in writing, electronically or in other form on or before the Separation Date."

72.     Plaintiffs have performed, or were excused from performing, all of their obligations under the Separation Agreement with SINHA.

73.     SINHA has breached his contractual obligations as alleged above.

74.     As a direct and proximate result of SINHA's breaches of contract, Plaintiffs have suffered, and will continue to suffer, actual damages in an amount to be determined according to

4821-7343-1865v5
KSHERMAN\24918001

proof. Plaintiffs seek compensation for all damages and losses directly and proximately caused by these breaches.

75.     Plaintiffs are entitled to preliminary and permanent injunctions restraining SINHA, and all persons acting in concert with him, from engaging in further such acts in breach of his Separation Agreement.

### SIXTH CAUSE OF ACTION

[Tortious Interference with Contract (Employment and Confidentiality Agreement) –

against AUDINTEL]

76.     Plaintiffs reallege, and incorporate herein by reference, the allegations of paragraphs 1 through 75.

77.     The Employment and Confidentiality Agreement between SINHA and ENVISTA, LLC is enforceable by Plaintiffs.

78.     Plaintiffs are informed and believe and on that basis allege that AUDINTEL, through at least one of its officers or directors, knew of the existence of the Employment and Confidentiality Agreement between SINHA and ENVISTA, LLC.

79.     Plaintiffs are informed and believe and on that basis allege that AUDINTEL intended to induce and intentionally induced SINHA to breach the  Employment and Confidentiality Agreement.

80.     There was no justification for SINHA to breach the Employment and Confidentiality Agreement or for AUDINTEL to interfere with the Employment and Confidentiality Agreement.

81.     Plaintiffs are informed and believe and on that basis allege that AUDINTEL intended to disrupt the performance of the Employment and Confidentiality Agreement or knew that disruption of performance was certain or substantially certain to occur.

82.     Plaintiffs are informed and believe and on that basis allege that AUDINTEL's conduct caused SINHA to breach the Employment and Confidentiality Agreement.

83.     Plaintiffs have been harmed, and AUDINTEL's conduct as alleged above was a substantial factor in causing Plaintiffs' harm.

4821-7343-1865v5
KSHERMAN\24918001

84. As a direct and proximate result of SINHA's breaches of the Employment and Confidentiality Agreement, and by AUDINTEL's tortious interference with that contract, Plaintiffs have suffered, and will continue to suffer, actual damages in an amount to be determined according to proof. Plaintiffs seek compensation for all damages and losses directly and proximately caused by these breaches.

85. In performing the acts alleged above, AUDINTEL acted intentionally, willfully, fraudulently, maliciously, and with gross negligence, and with the deliberate intent to injure Plaintiffs' business and benefit its own business, and for financial gain, thereby warranting an award of punitive damages in an amount appropriate to punish AUDINTEL and deter others from engaging in similar misconduct.

## SEVENTH CAUSE OF ACTION

[Intentional Interference with Contract (Separation Agreement) – against AUDINTEL]

86. Plaintiffs reallege, and incorporate herein by reference, the allegations of paragraphs 1 through 85.

87. The Separation Agreement between SINHA and EITS is enforceable by Plaintiffs as third-party beneficiaries.

88. Plaintiffs are informed and believe and on that basis allege that AUDINTEL, through at least one of its officers or directors, knew of the existence of the Separation Agreement between SINHA and EITS.

89. Plaintiffs are informed and believe and on that basis allege that AUDINTEL intended to induce and intentionally induced SINHA to breach the Separation Agreement.

90. There was no justification for SINHA to breach the Separation Agreement or for AUDINTEL to interfere with the Separation Agreement.

91. Plaintiffs are informed and believe and on that basis allege that AUDINTEL intended to disrupt the performance of the Separation Agreement or knew that disruption of performance was certain or substantially certain to occur.

92. Plaintiffs are informed and believe and on that basis allege that AUDINTEL's conduct caused SINHA to breach the Separation Agreement.

4821-7343-1865v5
KSHERMAN\24918001

93.     Plaintiffs have been harmed, and AUDINTEL's conduct as alleged above was a substantial factor in causing Plaintiffs' harm.

94.     As a direct and proximate result of SINHA's breaches of the Separation Agreement, and by AUDINTEL's tortious interference with that contract, Plaintiffs have suffered, and will continue to suffer, actual damages in an amount to be determined according to proof. Plaintiffs seek compensation for all damages and losses directly and proximately caused by these breaches.

95.     In performing the acts alleged above, AUDINTEL acted intentionally, willfully, fraudulently, maliciously, and with gross negligence, and with the deliberate intent to injure Plaintiffs' business and benefit its own business, and for financial gain, thereby warranting an award of punitive damages in an amount appropriate to punish AUDINTEL and deter others from engaging in similar misconduct.

## EIGHTH CAUSE OF ACTION

[Unfair Competition under Section 43(a) of the Lanham Act

(15 U.S.C. § 1125(a)) – against all Defendants]

96.     Plaintiffs reallege, and incorporate herein by reference, the allegations of paragraphs 1 through 95.

97.     By engaging in the acts alleged above, Defendants have engaged in unfair competition. As the source code upon which AUDINTEL's small parcel audit product is based belongs to Plaintiffs, Defendants' misrepresentation of its small parcel audit software as a product of AUDINTEL constitutes false advertising. Moreover, Defendants' misrepresentation of its products as a product of AUDINTEL is likely to create confusion in the marketplace. As Plaintiffs are engaged in interstate and foreign commerce, Defendants acts alleged above constitute violations of 15 U.S.C. § 1125(a).

98.     As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices and false advertising, Plaintiffs have lost money and property, and Defendants have enjoyed unlawful profits, in a sum not yet fully ascertained. Plaintiffs seek actual damages and the disgorgement of profits obtained by Defendants as a result of their unlawful, unfair, and

4821-7343-1865v5
KSHERMAN\24918001

fraudulent business practices and false advertising, in an amount to be determined according to proof.

99. As Defendants acted maliciously, fraudulently, deliberately, and willfully as alleged above, Plaintiffs are entitled to recovery of their attorneys' fees.

100. Plaintiffs seek preliminary and permanent injunctive relief to enjoin and restrain Defendants' conduct. Defendants' wrongful conduct will, unless and until enjoined and restrained by order of this Court, cause irreparable injury to Plaintiffs' business. Injunctive relief is also appropriate to restrain Defendants from further unlawful conduct for which Plaintiffs have no adequate remedy at law.

## NINTH CAUSE OF ACTION

[Unfair Competition under California Business & Professions

Code §§ 17200 *et seq.* – against all Defendants]

101. Plaintiffs reallege, and incorporates herein by reference, the allegations of paragraphs 1 through 100.

102. By virtue of the misconduct alleged above, Defendants have engaged in unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising in violation of California Business and Professions Code sections 17200 *et seq*.

103. As a direct and proximate result of Defendants' unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising, Plaintiffs have lost money and property, and Defendants have enjoyed unlawful profits, in a sum not yet fully ascertained. Plaintiffs seek the disgorgement of illicit profits obtained by Defendants as a result of their unlawful, unfair, and fraudulent business practices and unfair, deceptive, untrue, and misleading advertising, as alleged above.

104. Plaintiffs seek preliminary and permanent injunctive relief to enjoin and restrain Defendants' conduct. Defendants' wrongful conduct will, unless and until enjoined and restrained by order of this Court, cause irreparable injury to Plaintiffs' business. Injunctive relief is also appropriate to restrain Defendants from further unlawful conduct for which Plaintiffs have no adequate remedy at law.

4821-7343-1865v5
KSHERMAN\24918001

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

1.      Damages, past and future, in an amount sufficient to compensate Plaintiffs for the harm done to them by Defendants;

2.      An accounting to establish, and an order requiring restitution and/or disgorgement of, the sums by which Defendants have been unjustly enriched;

3.      Exemplary and punitive damages for Defendants' willful, intentional, fraudulent, malicious and/or grossly negligent actions;

4.      Pre-judgment and post-judgment interest at the maximum rate allowed by law;

5.      Injunctive relief temporarily, preliminarily, and permanently enjoining Defendants from further unlawful conduct for which Plaintiffs have no adequate remedy at law;

6.      Attorneys' fees and costs incurred by virtue of this action; and

7.      For such other and further relief as the Court may deem proper.

DATED: NOVEMBER 22, 2016                 BERLINER COHEN, LLP


                                          BY:   /S/ KATHLEEN F. SHERMAN
                                                CHRISTIAN E. PICONE
                                                KATHLEEN F. SHERMAN
                                                ATTORNEYS FOR PLAINTIFF ENVISTA LLC

## DEMAND FOR JURY TRIAL

Plaintffs hereby demand a trial by jury of all issues triable by a jury.

DATED: NOVEMBER 22, 2016                 BERLINER COHEN, LLP


                                          BY:   /S/ KATHLEEN F. SHERMAN
                                                CHRISTIAN E. PICONE
                                                KATHLEEN F. SHERMAN
                                                ATTORNEYS FOR PLAINTIFF ENVISTA LLC

CASE NO. _____

-27-

COMPLAINT